UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
EDWARD JORDAN and KELLY JORDAN,

                          Plaintiffs,

      -against-

TUCKER ALBIN AND ASSOCIATES,
INCORPORATED, JIM WILSON, RMS
INDUSTRIES, INC., RELIANCE
MECHANICAL SERVICES, INC., SPEEDY
LIEN, INC., MARK NASH, and KENNY
OLTMANNS,

                          Defendants.
-------------------------------------------------------------x

**MEMORANDUM AND
ORDER**

13-CV-6863 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court is Plaintiffs' Edward Jordan and Kelly Jordan ("Plaintiffs" or the "Jordans") second motion for reconsideration of the May 19, 2017 Memorandum and Order issued by the Honorable Joan M. Azrack, *see* Docket Entry ("DE") [153] (the "2017 Decision"), which, *inter alia*, granted summary judgment in favor of Defendants Speedy Lien, Inc. ("Speedy Lien") and Mark Nash ("Nash," and together with Speedy Lien, the "Speedy Lien Defendants"), dismissing Plaintiffs' Fair Debt Collection Practices Act ("FDCPA" or "the Act") claims as against them.[1]  *See* DE [175] ("Pltfs.' Motion").  For the reasons set forth below, Plaintiffs' motion is denied.[2]

---

[1] On June 21, 2017, this action was assigned to this Court for all purposes pursuant to 28 U.S.C. § 636(c).  *See* DE [158].

[2] The Court notes that it has the constitutional authority to review Judge Azrack's decision.  *See Abreu v. Verizon of New York, Inc.*, No. 15-cv-58, 2018 WL 1401326, at *3 (E.D.N.Y. Mar. 20, 2018) (discussing

## I.    Relevant Background

The Court summarizes facts relevant only to the instant motion.[3]  This case arises from disputed payments for repairs to Plaintiffs' home and the purportedly unlawful collection attempts that followed.  *See generally* Amended Complaint, DE [52].  The Jordans allege, *inter alia*, that Speedy Lien, which prepared and filed a mechanic's lien against the Plaintiffs' residence on behalf of Defendant RMS Industries, Inc. ("RMS"), did so in violation of the FDCPA.  *See id.*

The Jordans are a married couple who own a home in Islip, New York, which was damaged during Hurricane Sandy.  *See* 2017 Decision at 3.  The couple hired a general contractor to repair the damage, which, in turn, subcontracted RMS to perform certain mechanical work.  *See id.* at 3-4.  RMS allegedly performed its work but was never paid.  *See id.* at 4-5.  Peter Montana ("Montana"), an employee of RMS, then began to place calls to Plaintiffs concerning the delinquency and eventually sent a letter indicating that if the debt was not satisfied a lien would be placed on their property.  *See id.*

At some point after this letter was sent, Montana called Nash, the owner of Speedy Lien, requesting that the company put a mechanic's lien on Plaintiffs' home on RMS's behalf.  *See id.* at 5.  Nash instructed Montana to visit Speedy Lien's website, input the necessary information into an online form, and pay Speedy Lien, which Montana subsequently did.  *See id.*  Speedy Lien then filed the mechanic's lien

---

a magistrate judge's authority under 28 U.S.C. § 636(c) to review a district judge's decision on a dispositive motion after the case has been referred to the magistrate judge for all purposes).

[3] For additional background, *see* the 2017 Decision.

with the Suffolk County Clerk but failed to effectuate service of the lien on the Jordans as required by the New York State Lien Law. *See id.* at 5-6. As a result, Plaintiffs never received any communication or notification from Speedy Lien about the mechanic's lien. *See id.*

Based on the above, the Jordans commenced the instant action against, among others, the Speedy Lien Defendants alleging violations of the FDCPA and various state laws based on the lack of proper notice of the lien. After the close of discovery, the Speedy Lien Defendants moved for summary judgment, and Judge Azrack dismissed all FDCPA claims as to them. *See generally* 2017 Decision.

In her 2017 Decision, Judge Azrack found that the filing of a mechanic's lien on behalf of a creditor does not, without more, constitute an activity that may qualify the filer as a "debt collector" covered under the Act. *See id.* at 15-16. Initially, the Court concluded that a company, such as Speedy Lien, which files mechanic's liens on behalf of creditors, "is not engaged in a business 'the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.'" *See id.* (citing *Mladenovich v. Cannonite*, No. 97-cv-4729, 1998 WL 42281, at *3 (N.D. Ill. Jan 30, 1998) (holding that the filing of mechanic's lien notices did not constitute "debt collections covered by the FDCPA")). Instead, Judge Azrack noted that "the filing of mechanic's liens is, at most, an auxiliary activity related to the existence of an unpaid debt." *See id.* Alternatively, the Court determined that, even if the Speedy Lien Defendants were debt collectors, it is undisputed that they never communicated with

Plaintiffs. *See id.* Thus, the Speedy Lien Defendants never engaged in any "collection activity" required to support an FDCPA claim. *See id.*

Approximately eight months after the 2017 Decision was published (and after this case was assigned to this Court for all purposes), Plaintiffs filed their first motion for reconsideration. *See* DE [161] (the "First Reconsideration Motion"). The Jordans argued that reconsideration was warranted because of an intervening change in controlling case law based on the Second Circuit's decisions in *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017) and *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75 (2d Cir. 2018), as well as the Minnesota Court of Appeals decision in *Randall v. Paul*, 897 N.W.2d 842 (Minn. Ct. App. 2017). *See* First Reconsideration Motion. Plaintiffs contended that the preceding trio of cases make it clear that the Speedy Lien Defendants' conduct – filing a mechanic's lien on behalf of a creditor – constituted conduct subject to the FDCPA. *See id.* In denying the First Reconsideration Motion, this Court distinguished the authority relied on by Plaintiffs by virtue of those cases involving defendants who admittedly acted as debt collectors under the FDCPA. *See* DE [171]. Thus, the Court concluded that those cases involved direct actions of debt collectors providing false or misleading representations to consumers about an outstanding debt, rather than reaching the instant issue of whether a company that filed mechanic's liens on behalf of a creditor, without more, is a debt collector covered by the Act in the first instance. *See id.* As a result, this Court declined to disturb Judge Azrack's finding that the Speedy Lien Defendants

were entitled to summary judgment dismissing the Jordans' FDCPA claims as against them. *See id*.

Plaintiffs now make a second motion for reconsideration of the 2017 Decision, arguing that the Supreme Court's March 20, 2019 decision in *Obduskey v. McCarthy & Holthus LLP*, __ U.S. __; 139 S. Ct. 1029 (2019), renders the Speedy Lien Defendants liable under the FDCPA. *See* Pltfs.' Motion.  As discussed below, The Jordans' motion is without merit.

## II. Legal Standards

### A. <u>Motions for Reconsideration</u>

Courts may reconsider an interlocutory order at any time before entry of final judgment. *See, e.g.*, *Bonano v. Doe*, 628 Fed. Appx. 25, 27 (2d Cir. 2015) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  The decision to grant or deny a motion for reconsideration lies within the discretion of the district court. *See Devlin v. Transp. Comm'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999).

An "interlocutory order 'may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03-cv-10254, 2009 WL 4667102 at *3 (S.D.N.Y. Dec. 9, 2009) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).  "The standard for a motion for reconsideration is demanding and should be 'narrowly construed and

strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.'" *Henry v. Alliance for Health, Inc.*, No. 05-cv-1264, 2006 WL 3050873, at *1 (E.D.N.Y. Oct. 18, 2006) (quoting *Wechsler v. Hunt Health Sys., Ltd.*, 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002)); *see also Hunt v. Enzo Biochem, Inc.*, No. 06-cv-170, 2007 WL 1346652, at *1 (S.D.N.Y. May 7, 2007) ("A motion for reconsideration is not . . . a second bite at the apple for a party dissatisfied with a court's ruling") (internal quotation omitted).

### B.    <u>Fair Debt Collection Practices Act</u>

The FDCPA prohibits deceptive practices by debt collectors. *Llewellyn v. Asset Acceptance, LLC*, No. 15-cv-3681, 2016 WL 5944723, at *1 (2d Cir. Oct. 13, 2016). To establish a claim under the FDCPA, a plaintiff must show that: (1) the plaintiff is a "consumer" under the Act; (2) the defendant is a "debt collector;" and (3) the defendant engaged in conduct violating the statute. *Katz v. Sharinn & Lipshie, PC*, 12–cv–2440, 2013 WL 4883474, at *1 (E.D.N.Y. Sept. 11, 2013). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In addition, for the limited purposes of Section 1692f(6) of the Act, "[a 'debt collector'] also includes any person … in any business the principal purpose of which is the *enforcement* of security interests." *See id.* (emphasis added). Section 1692f(6), in turn, makes the following a violation of the Act:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if … (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

## III.   Discussion

The Jordans contend that reconsideration is warranted because of an intervening change in controlling case law based on the Supreme Court's decision in *Obduskey*.  This argument misses the mark, as *Obduskey* concerns businesses who *enforce* security interests – conduct that Plaintiffs concede the Speedy Lien Defendants did not engage in.

In *Obduskey*, the Supreme Court held that a law firm that was hired by a mortgagee to act as its agent in carrying out a nonjudicial foreclosure on a home was not a "debt collector" under the FDCPA, *except* for the limited purpose of Section 1692f(6).  *See* 139 S. Ct. 1031.  In that case, the law firm first mailed the plaintiff a letter stating that it had been "instructed to commence foreclosure" against the property.  *See id*. at 1035.  Pursuant to the FDCPA, the plaintiff disputed the debt, requiring the collection activities to cease until verification has been obtained and provided to the debtor.  *See id*. (citing 15 U.S.C. § 1692g(b)).  The law firm's alleged failure to halt such collection efforts and instead initiate the nonjudicial foreclosure proceedings sparked the controversy therein.  *See id*.

7

The majority of the Court's decision in *Obduskey* focused on determining Congress's intent – by virtue of the word "also" in the statute – to have entities who enforce security interests be considered debt collectors only for the limited purpose of Section 1692f(6), as opposed to under the main coverage of the Act. *See id*. at 1036-38. That discussion, however, is inapplicable to the case at bar because the complained-of law firm therein was retained to *enforce* a security interest (*i.e.* to foreclose on a mortgage secured by real property), rendering it subject to the specific prohibitions set forth in Section 1692f(6). *See id*. at 1036. Here, conversely, as conceded by the Jordans, the Speedy Lien Defendants were merely "hired … to *draft* and *file* the lien[,]" Pltfs.' Motion at n. 3 (emphasis added), whereas Defendant Tucker Albin "*used* the filed mechanic's lien to threaten Plaintiffs with foreclosure on their home." *See id*. In other words, Tucker Albin, not Speedy Lien, *enforced* (or threatened to enforce) the security interest (*i.e.*, the mechanic's lien). *See* 2017 Decision at 6 (The Jordans "first learned about the lien when [they] received a call from … Tucker Albin"). Accordingly, the Speedy Lien Defendants do not qualify as "debt collectors" under the FDCPA.

The Court further concludes that, despite Plaintiffs' implication that *Obduskey* expanded the definition of "debt collector" under the Act, the decision in fact *narrowed* the general coverage of the Act to determine that those who enforce security interests are *only* covered by Section 1692f(6). *Obduskey*, 139 S. Ct. at 1036 ("[The Court] concede[s] that if the FDCPA contained *only* the primary definition [of 'debt collector'], a business engaged in nonjudicial foreclosure proceedings would qualify as

a debt collector for all purposes"). To that end, the Court notes that Judge Azrack's original decision did not even address whether the Speedy Lien Defendants were "debt collectors" in the Section 1692f(6) context (a definition that remains unchanged after *Obduskey*). Thus, insofar as Plaintiffs now seek to present new arguments (*i.e.*, that the Speedy Lien Defendants should be limited-purpose debt collectors), their failure to previously seek this classification acts as a waiver of that position at the motion for reconsideration stage.

Insofar as Plaintiffs argue that the Speedy Lien Defendants' conduct is actionable because the filing of a mechanic's lien is an antecedent step to foreclosure, this argument is similarly rejected. In *Obduskey*, the law firm's preliminary communications with the debtors were part of the required process that the firm had to engage in when foreclosing on the subject home, and as such those communications were included in the debt collection process. *Obduskey*, 139 S. Ct. at 1039-40. Again, however the Court's decision with respect to those preliminary steps did not broaden the definition of "debt collector," but merely stated that those antecedent steps were also excluded from the Act's general coverage. *See id.* ("[E]very nonjudicial foreclosure scheme of which we are aware involves notices to the homeowner…. And because he who wills the ends must will the necessary means, we think the Act's (partial) exclusion of 'the enforcement of security interests' must also exclude the legal means required to do so") (internal citation omitted). Thus, even if the filing of a mechanic's lien is deemed an antecedent step to foreclosure, the Speedy Lien

9

Defendants are not considered "debt collectors" because they were not hired to *enforce* the security interest they helped create.

In short, *Obduskey* does not change Judge Azrack's conclusion that there is no authority to support that a company engaged in the *filing* of mechanic's liens qualify as debt collectors. *See* 2017 Decision at 15.[4] Accordingly, Plaintiffs again fail to establish an intervening change in controlling law sufficient to warrant reconsideration of the 2017 Decision and the motion is therefore denied.

## IV.    Conclusion

For the reasons set forth above, Plaintiffs' motion for reconsideration is denied.

**SO ORDERED**

Dated:      Central Islip, New York
            September 24, 2019          /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge

---

[4] Because *Obduskey* does not render the Speedy Lien Defendants a "debt collector" covered by the FDCPA, the Court declines to consider Plaintiffs' argument that the Act does not require communication with a consumer in this context. *See* Pltfs.' Motion at 1-2.